UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | NO. CR-08-146-LRS |
| Plaintiff, ) | |
| ) | **ORDER RE MOTION** |
| v. ) | **TO RECONSIDER** |
| DALLAS C. HERMAN, ) | |
| Defendant. ) | |

**BEFORE THE COURT** is the Defendant's Motion To Reconsider Order Denying Motion To Suppress Evidence (Ct. Rec. 57). The motion was heard with oral argument on September 2, 2009. Defendant presented evidence in the form of testimony from Sally Waddle, a forensic chemist with Intermountain Forensic Laboratories.

**I. BACKGROUND**

Defendant asks the court to reconsider its 's February 4, 2009 "Order Denying Motion To Suppress" (Ct. Rec. 43) in light of the U.S. Supreme Court's decision in *Arizona v. Gant*, ____ U.S. ____, 129 S.Ct. 1710 (2009).

In *Gant*, the Supreme Court held that a warrantless search of a motor vehicle incident to lawful arrest is justified in two circumstances: 1) when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search; and 2) when it is reasonable to believe the vehicle contains evidence of the offense of arrest. 129 S.Ct. at 1723.

Here, the Government cannot contend Defendant was unsecured and within

**ORDER RE MOTION
TO RECONSIDER-                    1**

reaching distance of the passenger compartment at the time the trooper searched the Defendant's vehicle. At the time of the search, Defendant had already been patted down for weapons by Trooper Walker and was standing at the rear of the vehicle. Although the Defendant apparently had not yet been handcuffed, he was not within "reaching distance of the passenger compartment," and he was not "unsecured" because a Spokane police officer who had arrived at the scene (Officer Boothe), stood with the Defendant while Trooper Walker searched the vehicle.

Thus, the question under *Gant* is whether it was reasonable for Trooper Walker to believe that the vehicle contained evidence relevant to the crimes of arrest. According to the Supreme Court in *Gant*:

> In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. [Citations omitted]. But in others, including *Belton* and *Thornton*, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.[1]

---

[1] In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2680 (1981). the crime of arrest was possession of a controlled substance. The officer, upon stopping the vehicle, smelled burnt marijuana and was able to see on the floor of the vehicle an envelope marked "Supergold" that he associated with marijuana. After directing the passengers to exit the vehicle, he searched the vehicle and found that the envelope did in fact contain marijuana, and that a jacket on the backseat of the car contained cocaine in one of the pockets.

In *Thornton v. United States*, 541 U.S. 615, 618, 124 S.Ct. 2127 (2004), the crime of arrest was also possession of a controlled substance. When the officer accosted the defendant, the defendant was already out of his vehicle. Defendant agreed that the officer could pat him down. During the pat down, the officer felt a bulge in the defendant's left front pocket and asked him if he had any illegal narcotics on him. The defendant admitted that he did and reached into his pocket and pulled out two individual bags, one containing three bags of marijuana, and the other bag containing a large amount of crack cocaine. After arresting the defendant and placing him handcuffed into the back of his patrol car, the officer

**ORDER RE MOTION TO RECONSIDER-**        2

> Neither the possibility of access nor the likelihood of discovering offense-related evidence authorized the search in this case. . . . An evidentiary basis for the search was . . . lacking in this case. Whereas Belton and Thornton were arrested for drug offenses, Gant was arrested for driving with a suspended license- an offense for which the police could not expect to find evidence in the passenger compartment of Gant's car. [Citation omitted]. Because police could not reasonably have believed either that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein, the search in this case was unreasonable.

129 S.Ct. at 1719.

The crimes of arrest with regard to Defendant were DUI and possession of a controlled substance. The pat down search of the Defendant, which this court found to be justified, resulted in Trooper Walker discovering a spoon in Defendant's right front pant pocket. The court found that removal of the spoon from Defendant's pocket was justified because the trooper reasonably believed it to be a weapon. Trooper Walker testified that the spoon had a powdery crystal residue on it which he recognized as methamphetamine. This court specifically found Trooper Walker was credible in testifying that based on his training and experience, he recognized the residue as methamphetamine.[2] This court concluded that:

> Combined with the trooper's previous observations of Defendant's erratic driving (including the fact Defendant ultimately stopped his vehicle in the median), and Defendant's physical appearance and behavior (i.e., his eyes were droopy, his speech fast and slurred, he forgot to remove his seatbelt when he tried to exit the vehicle, and mumbled that nothing in the vehicle was his as the vehicle did not belong to him), the discovery of the spoon with the methamphetamine residue

---

conducted a search of the defendant's vehicle and found a handgun under the driver's seat.

[2] This court found it was insignificant that the trooper did not field test the residue until after he searched Defendant's vehicle because "[t]he field test simply confirmed what the trooper already believed to a reasonable degree of certainty." (Ct. Rec. 43 at p. 4).

**ORDER RE MOTION TO RECONSIDER-            3**

> provided the trooper with probable cause to arrest the Defendant for possession of a controlled substance and/or driving under the influence. As such, the Trooper was justified in conducting a warrantless search of Defendant's vehicle "incident to arrest," and/or pursuant to the automobile exception to the warrant requirement.

(Ct. Rec. 43 at p. 4).

This court noted that in addition to searching the vehicle because of a concern for officer safety (possibility of a weapon being located inside the vehicle), Trooper Walker had "reason to believe evidence relevant to the crime of arrest might be found in the vehicle." *Thornton*, 541 U.S. at 632 (Scalia, J., concurring in the judgment). (Ct. Rec. 43 at p. 5).[3]

Besides the search incident to arrest exception, this court found that another exception justified the warrantless search of Defendant's vehicle, that being the automobile exception ("[t]he spoon with the residue also provided probable cause to search the vehicle independent of probable cause to arrest the Defendant"). The automobile exception provides that once probable cause exists to believe that a motor vehicle contains contraband and the vehicle can be moved, officers may conduct a warrantless search of the vehicle and the scope of that search is as broad as a magistrate could authorize through a warrant. *California v. Carney*, 471 U.S. 386, 394-95, 105 S.Ct. 2066 (1985). According to *Gant*, when justifications for a warrantless search incident to arrest are absent, "a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." 129 S.Ct. at 1723-24.

## II. DISCUSSION

A motion for reconsideration can only be granted when a district court: (1) is presented with newly discovered evidence; or (2) committed clear error or the

---

[3] This passage was incorrectly quoted and cited in the court's "Order Denying Motion To Suppress." It is corrected here.

**ORDER RE MOTION TO RECONSIDER-**             4

initial decision was manifestly unjust; or (3) there has been an intervening change in controlling law. *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir. 2003).[4]

In his motion to reconsider, Defendant does not take specifically take issue with the court's finding that his vehicle was lawfully stopped by Trooper Walker. Nor does Defendant specifically take issue with there being justification for Trooper Walker to ask the Defendant to exit his vehicle and for the trooper to conduct a pat down search of Defendant's person to determine if he was armed with a weapon. The pat down search resulted in the discovery of a spoon in Defendant's right front pant pocket. Defendant does not specifically dispute that Trooper Walker was justified in removing the spoon from Defendant's pocket to ascertain if it was some kind of weapon.

Defendant does take issue with whether there was methamphetamine residue on the spoon at the time Trooper Walker discovered the spoon. Through the testimony of Ms. Waddle, Defendant seeks to establish there is doubt as to whether Trooper Walker observed any residue on the spoon and in turn, whether he had probable cause to arrest the Defendant for possession of a controlled substance and/or DUI, and whether he otherwise had probable cause to search Defendant's vehicle. Essentially, Defendant challenges the trooper's credibility with regard to what, if anything, was on the spoon, and suggests this reflects on the trooper's credibility as a whole with regard to the entire incident.

During the January 21, 2009 suppression hearing, Trooper Walker testified that the residue situated on the spoon was "almost the mirror image" of the manner in which residue was situated on the concave bottom of a hair spray can that was discovered in the vehicle. Defendant notes, however, that a Washington State

---

[4] The court assumes the same standard applies in both civil and criminal cases, even though the Federal Rules of Criminal Procedure do not contain a provision akin to Fed. R. Civ. P. 59(e) "Motion to Alter or Amend a Judgment."

**ORDER RE MOTION
TO RECONSIDER-            5**

Patrol (WSP) photograph of the spoon and the hair spray can side-by-side, taken on August 26, 2008, indicates that while residue is clearly visible on the bottom of the can, there is no residue on the concave portion of the spoon which is visible to the naked eye. (Defendant's Ex. 101).[5] Ms. Waddle testified that the Drug Enforcement Administration (DEA) chemist indicated to her that the residue which had been collected in vials had all been collected from the hair spray can and that she (the DEA chemist) had not seen anything of physical interest on the spoon.[6] A "Forensic Chemist Worksheet" from the DEA lab states there was "a metal spoon and a Herbal Essence orange hair spray can with a white residue on the bottom" and that the lab "[f]ollowed sampling plan- ground entire sample to a fine powder. From hair spray (sic) can only." (Defendant's Ex. 104). Ms. Waddle acknowledged, however, that her testing identified a very small amount of methamphetamine on the spoon, even though there was substantially more on the hair spray can. She opined that the bottom of the can had not previously been chemically rinsed by the DEA lab, but could not tell if the spoon had previously been so rinsed. Ms. Waddle noted that when she received the spoon and can, they were both located in the same bag, raising the possibility that the methamphetamine detected on the spoon was due to the spoon being contaminated by the can.

On direct examination, Ms. Waddle testified she had not observed any scrape marks on the spoon which would indicate it had been field tested. On cross-examination, however, she acknowledged that the scraping device used in the NIK

---

[5] The traffic stop, Defendant's arrest, and the search of his vehicle occurred on August 26, 2008. The WSP photograph would have been taken not long afterwards.

[6] The DEA laboratory examined the spoon and can first before it was turned over to Intermountain Forensic Laboratories.

**ORDER RE MOTION TO RECONSIDER-**            6

brand of field testing kits is made of cardboard and in any event, she did not know exactly what type of field test may have been conducted by Trooper Walker.  Ms. Waddle testified she believed that both the spoon and can had been subjected to fingerprint analysis by the Government and acknowledged this could potentially affect subsequent testing of such items for the presence of a controlled substance. She did not know for sure whether the spoon and can had been subject to fingerprint analysis, but testified that while the can appeared to have "fuming" residue on it from such analysis, she could not detect the same on the spoon.

     While Ms. Waddle's testimony raises some interesting questions, the court is not persuaded that it is sufficient to impeach the trooper's testimony that after he removed the spoon from Defendant's pocket, he saw residue on the spoon which he recognized as methamphetamine.  While the WSP photograph appears not to depict any residue on the spoon (Defendant's Ex. 101), there also appears to be a legitimate reason why that might be so, that being the residue was removed during field testing by the trooper.  Furthermore, Intermountain Forensics Laboratories found there was some small amount of methamphetamine on the spoon.  Placing the spoon and the can in the same evidence bag certainly raises the possibility that methamphetamine from the can got on to the spoon, but that is only a possibility and Trooper Walker appears to have not been the person responsible for sealing the items into the bag.[7]  Of course, if this matter proceeds to trial, it will be a jury's responsibility to make its own independent determination of Trooper Walker's credibility.

     Trooper Walker may have made some conflicting statements during the course his testimony at the suppression hearing, and there may also be some

---

[7] The Government acknowledges this was a violation of WSP evidence protocol which requires that "[e]ach item must be wrapped and sealed separately to avoid contamination." (Defendant's Ex. 103).

**ORDER RE MOTION
TO RECONSIDER-                        7**

inconsistencies between his testimony and his written reports of the incident, and between his original and supplemental written reports. The court notes, however, that the existence of probable cause is based on an objective "reasonable officer" standard. The subjective motivations of the officer are irrelevant. *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769 (1996). "Probable cause to arrest exists when officers have knowledge of reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 U.S. 1067, 1072 (9th Cir. 2009). The critical issue is whether the information Trooper Walker had at the time and on the scene of the traffic stop would have led a reasonable officer to conclude there was probable cause to arrest the Defendant for possession of a controlled substance and/or DUI, and/or to conclude there was probable cause to conclude the vehicle contained contraband.

      Residue on the spoon which the trooper recognized as methamphetamine based on his training and experience, cemented the existence of probable cause to arrest the Defendant for possession of a controlled substance and to conduct a search of the Defendant's vehicle incident to that arrest. It was reasonable to believe that the vehicle contained evidence of the crimes of arrest. The residue on the spoon also cemented the existence of probable cause to believe there was contraband in the vehicle, justifying a search of the vehicle pursuant to the automobile exception, independent of probable cause to arrest. It is important to emphasize, however, that this was but one circumstance in a "totality of circumstances" which would have led a reasonable officer to conclude he had probable cause to arrest the Defendant for possession of a controlled substance and/or DUI, and that he otherwise had probable cause to believe there was contraband in the vehicle. There are additional circumstances which occurred prior to the discovery of the spoon, including Defendant's erratic driving and his physical appearance and behavior which reasonably suggested he was under the

**ORDER RE MOTION
TO RECONSIDER-                                8**

influence of alcohol and/or a controlled substance.

Even had there not been residue on the spoon, the discovery of the spoon, considered along with the totality of the other circumstances, would have led a reasonable officer to conclude he had probable cause to arrest the Defendant for possession of a controlled substance and/or DUI, and that he otherwise had probable cause to believe there was contraband (a controlled substance) in the vehicle. A reasonable officer would have concluded the spoon was being used as drug paraphernalia (a "cook spoon") in connection with possession and use of some type of illicit controlled substance, even if he did not need to know the particular substance involved. Although under Washington law a person cannot be arrested for possession of drug paraphernalia, *State of Washington v. O'Neill*, 148 Wn.2d 564, 584 n. 8, 62 P.3d 489 (2003), possession of the same can be considered in determining whether there is probable cause to arrest an individual for possession of a controlled substance, and/or probable cause to believe there is a controlled substance in the individual's vehicle. Defendant was not arrested for possession of drug paraphernalia. He was arrested for possession of a controlled substance and for DUI.

### III. CONCLUSION

The court has reconsidered its "Order Denying Motion To Suppress" in light of *Gant* and the testimony of Ms. Waddle regarding the analysis conducted by the Intermountain Forensic Laboratories. This reconsideration does not, however, warrant a different result. Under *Gant*, it was reasonable for Trooper Walker to believe the vehicle contained evidence of the crimes of arrest, thereby justifying a warrantless search of that vehicle incident to arrest. Prior to the search of the vehicle, the trooper had probable cause to arrest the Defendant for possession of a controlled substance and/or DUI. Alternatively, or in addition thereto, the trooper had probable cause to believe there was contraband in the vehicle, justifying a

1  warrantless search of the same pursuant to the automobile search exception.

2  The new evidence presented (Ms. Waddle's testimony), and the intervening change in the controlling law (*Gant*), do not warrant suppression of the evidence discovered in Defendant's vehicle. The court has not committed a "clear error" in denying Defendant's motion to suppress. To the extent the Defendant's Motion To Reconsider seeks an order reversing the court's prior "Order Denying Motion To Suppress" (Ct. Rec. 43), the Motion To Reconsider (Ct. Rec. 57) is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel.

**DATED** this 11th day of September, 2009.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
Chief United States District Judge